LAW OFFICES OF RODNEY BRIDGERS, LLLC

RODNEY P. BRIDGERS, JR. 9505
707 Richards Street, Ste. 526
Honolulu, Hawaii 96813
Telephone: (808) 536-3255
Facsimile: (808) 524-5593

LAW OFFICE OF DAVID F. SIMONS

DAVID F. SIMONS    2179-0
707 Richards Street, Ste. 526
Honolulu, Hawaii 96813
Telephone: (808) 536-3255
Facsimile: (808) 524-5593

Attorneys for Plaintiffs
STEPHANA WOODEN,
BRANDY REEVES

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STEPHANA WOODEN; BRANDY REEVES, | CIVIL NO. |
| | (Other Civil Action) |
| Plaintiffs, | COMPLAINT; DEMAND FOR JURY TRIAL |
| vs. | |
| COMPREHENSIVE HEALTH MANAGEMENT, INC.; WELLCARE HEALTH INSURANCE OF ARIZONA, INC., | |
| Defendants. | |

## COMPLAINT

COME NOW Plaintiff STEPHANA WOODEN ("WOODEN") and Plaintiff BRANDY REEVES ("REEVES") by and through their attorneys, Rodney P. Bridgers, Jr., and David F. Simons, and hereby complains against the above-mentioned Defendants and alleges and avers as follows:

### I. JURISDICTION AND VENUE

1. Jurisdiction is based on the fact that this case is brought pursuant to the Civil Rights Act of 1866 [codified at 42 U.S.C.A. §§1981]. Plaintiffs claim that Defendants violated their rights under this act. This court has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under U.S. Law, and 28 U.S.C. § 1343 (3) and 28 U.S.C. § 1343 (4) which provides this Court with jurisdiction in this Civil Rights case.

2. The acts, omissions, and transactions alleged herein occurred entirely in the State of Hawaii. Pursuant to 28 U.S.C. § 1391(b), venue is therefore proper in this Court.

### II. PARTIES

3. Plaintiff STEPHANA WOODEN ("WOODEN") is a former resident and citizen of the City of Kapolei and County of Honolulu, State of Hawaii, at all times pertinent hereto and is now a resident of New Braunfels, Texas.

4. Plaintiff BRANDY REEVES ("REEVES") is a former resident and citizen of the City and County of Honolulu, State of Hawaii at all times pertinent hereto and is now a resident of Anchorage, Alaska.

5. Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC., ("Defendant CHMI") is a foreign profit corporation, registered to do business and is doing business in the City and County of Honolulu, State of Hawaii.

6. Defendant WELLCARE HEALTH INSURANCE OF ARIZONA, INC. ("Defendant WELLCARE") is a foreign profit corporation, registered to do business under the brand name Ohana Health Plan and is doing business in the City and County of Honolulu, State of Hawaii.

7. Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC. and WELLCARE HEALTH INSURANCE OF ARIZONA, INC. are part of an integrated enterprise. This integrated enterprise will be referred to jointly as "Defendants WELLCARE".

III. STATEMENT OF FACTS

PLAINTIFF WOODEN

8. Plaintiff WOODEN was employed by Defendant CHMI, and thus by Defendants WELLCARE, from April 10, 2017 through February 27, 2018.

9. Plaintiff WOODEN was hired in April 2017 as a temporary worker in Defendants WELLCARE's Quality Department as a Care Gap Coordinator.

10. The Care Gap Coordinator position was a mostly sedentary job assisting other managers with scheduling, calls and computer work.

11. Plaintiff WOODEN's employment status was changed to "permanent" in May 2017.

12. Plaintiff WOODEN was initially supervised by the Quality Department manager, Desiree, but then in August after Desiree quit, Plaintiff WOODEN was supervised by Anne Reis.

13. Plaintiff WOODEN had pre-existing medical conditions such as a back injury and severe migraines, of which she informed Defendants WELLCARE at the beginning of her employment.

14. Due to these medical conditions, Defendants WELLCARE allowed Plaintiff WOODEN to remain working but provided Plaintiff WOODEN with ADA accommodations such as a special cushion for her back, a desk that raised up so she could stand and still do work, permission to get up from her desk and take a short walk when her back locked up and also permission to wear her sunglasses at her desk when she felt a migraine coming on.

15. On or about December 6, 2017, Plaintiff WOODEN went out on leave for back surgery.

16. On or about January 2, 2018, Plaintiff WOODEN returned from leave with the same ADA restrictions she had prior to her surgery.

17. On or about January 2, 2018, Plaintiff WOODEN was told that she now was being supervised by VP Sandy Sullivan.

18. VP Sandy Sullivan is discriminatory toward African Americans.

19. Plaintiff WOODEN has been subjected to discrimination and harassment by Defendants WELLCARE based upon her race, African American, and color, black.

20. The discrimination and harassment began on or about April 27, 2017 and continued through Plaintiff WOODEN'S termination on February 27, 2018.

21. The discrimination and harassment included disparate treatment by Plaintiff WOODEN'S supervisor, Vice President Sandy Sullivan.

22. On numerous occasions Plaintiff WOODEN would pass Ms. Sullivan in the hallway and say "hello Sandy". Ms. Sullivan would not respond, ignore Plaintiff WOODEN's greeting and walk right past her and greet other non-African American non-black employees.

23. On several occasions Plaintiff WOODEN would be working at a table with other non-African American non-black co-workers and Ms. Sullivan would walk next to the table. Plaintiff WOODEN would say "hello Sandy" and Ms. Sullivan would completely ignore Plaintiff WOODEN and instead greet the other non-African American non-black co-workers or start a conversation with the other non-African American non-black co-workers seated next to Plaintiff WOODEN.

24. On several occasions Ms. Sullivan would walk through the Quality Department, right past Plaintiff WOODEN's desk, Plaintiff WOODEN would say "hello Sandy". Ms. Sullivan would ignore Plaintiff WOODEN as if she was not there and start a conversation with other non-African American non-black co-workers seated next to Plaintiff WOODEN.

25. On one occasion, Plaintiff WOODEN was in the office kitchen alone and Ms. Sullivan walked in. Plaintiff WOODEN turned to face Ms. Sullivan who was staring right at her and said, "hello Sandy". Ms. Sullivan ignored Plaintiff WOODEN as if she was not there or had not said anything, grabbed her food from the refrigerator and walked out of the kitchen.

26. While Plaintiff WOODEN was on leave for her December 2017 back surgery, Ms. Sullivan took over supervision of Plaintiff WOODEN's department. Ms. Sullivan had one-to-one meetings with non-black members of Plaintiff WOODEN's department, but when Plaintiff WOODEN requested via email on 1/2/18 & 1/3/18 to have such a one-to-one with Ms. Sullivan, Ms. Sullivan did not respond nor did she ever meet with Plaintiff WOODEN one-to-one.

27. The discrimination and harassment of Plaintiff WOODEN included disparate treatment based upon race by WellCare Vice President Sandy Sullivan regarding her ADA accommodations.

28. On or about January 3, 2018, upon returning to work, Plaintiff WOODEN was called by Wellcare HR employee Joyce Baker at the instruction of Wellcare Vice President Sandy Sullivan to notify Plaintiff WOODEN that she was to go home and not return until she had no restrictions for her back condition.

29. Defendant Wellcare discriminated against Plaintiff WOODEN by treating her differently than other non-African American non-black employees and did not allow Plaintiff WOODEN to return to work despite having a medical release from her doctor and having the same light duty restrictions and ADA accommodations she had prior to her leave in December.

30. Plaintiff WOODEN was forced to remain off work for an additional two weeks, until her next doctor's appointment.

31. Plaintiff WOODEN was fired by Defendants WELLCARE for purely racially discriminatory reasons.

32. Defendants WELLCARE discriminated and harassed Plaintiff WOODEN by giving false reasons for termination to the State Unemployment Office to prevent Plaintiff WOODEN from receiving unemployment insurance payments.

33. Defendants WELLCARE initially told the State Unemployment Office that Plaintiff WOODEN was terminated for excessive absenteeism, specifically taking unscheduled time off.

34. Plaintiff WOODEN provided the unemployment office claims examiner with doctor's certificates showing her absences were due to medical reasons.

35. Defendants WELLCARE then harassed Plaintiff WOODEN by changing the reason for Plaintiff WOODEN's termination to further delay or prevent Plaintiff WOODEN from receiving unemployment benefits, stating that Plaintiff WOODEN was terminated because she did not follow call-in procedures.

36. Plaintiff WOODEN refuted Defendants WELLCARE's second false reason for her termination and provided the unemployment claims examiner with copies of texts to prove that she did properly notify Defendants WELLCARE each time of her absence.

37. Plaintiff WOODEN was awarded unemployment benefits because the unemployment claims examiner after reviewing all the evidence determined Plaintiff's WOODEN's termination was not due to any "willful or deliberate disregard of the employer's interests".

<u>PLAINTIFF REEVES</u>

38. Plaintiff REEVES was employed with Defendant CHMI, and thus, Defendants WELLCARE from February 1, 2016 through February 17, 2018.

39. Plaintiff REEVES was initially hired as a temp worker for the HEDIS project in February 2016 through May 2016.

40. Plaintiff REEVES was again hired as a temp worker for the HEDIS project in November 2016.

41. In July 2017, Plaintiff REEVES was hired as a full-time worker in the position of Care Gap Coordinator by Desiree, the Manager of the Quality Department in Defendants WELLCARE's Kapolei office.

42. Plaintiff Reeves was constructively terminated on February 17, 2018.

43. On or about August 2017, Desiree quit and Plaintiff REEVES was put in charge of the HEDIS project.

44. In November 2017 Anne Reis as the Director of the Quality Department in Defendants WELLCARE's Kapolei office, promoted Plaintiff REEVES to Sr. Quality Coordinator.

45. Plaintiff REEVES did not have any write-ups or suspensions while Desiree or Ms. Reis was her supervisor.

46. Plaintiff REEVES was subject to discrimination and harassment based upon her race, African American and, her color, black.

47. The discrimination and harassment began on or about December 2017, when Sandy Sullivan, VP of Defendant WELLCARE, took over as Plaintiff REEVES' supervisor, when Ms. Reis was suspended.

48. The discrimination and harassment included disparate treatment by Plaintiff REEVES' supervisor, Ms. Sullivan, based on Plaintiff REEVES' race and color.

49. On or about December 2017, when Ms. Sullivan took over as Plaintiff REEVES' supervisor, she met with everyone in the Quality Department including Plaintiff REEVES.

50. During the initial meeting between Ms. Sullivan and Plaintiff REEVES, Ms. Sullivan made it a point to tell Plaintiff REEVES that Plaintiff REEVES' co-worker was upset that Plaintiff REEVES was promoted to the position of senior quality care coordinator.

51. Ms. Sullivan relayed this information to Plaintiff REEVES to harass and belittle her and create an environment of discord amongst Plaintiff REEVES and her co-workers.

52. At the time of this meeting, Plaintiff REEVES was the only black, African American worker in the Quality Department. The only other black African Americans who worked in the Quality Department at that time was Anne Reis and Plaintiff WOODEN. Ms. Reis was on suspension and Plaintiff WOODEN was on medical leave following surgery.

53. Ms. Sullivan further discriminated against Plaintiff REEVES due to her color, black and race, African American by requiring that Plaintiff REEVES obtain a doctor's note from her OBGYN for each and every prenatal appointment.

54. Plaintiff REEVES complied with Ms. Sullivan and obtained a note from her OBGYN for every prenatal appointment she attended that was during work hours.

55. Plaintiff REEVES was upset that Ms. Sullivan was harassing her for having to take time off for her prenatal appointments and requiring a note for each and every appointment and called HR to complain.

56. Upon calling HR, Plaintiff REEVES was informed that the policy followed by Defendants WELLCARE was that a doctor's note was only required when the employee missed work due to illness of 3 or more days in a row.

57. Ms. Sullivan was not following company policy with regards to requiring Plaintiff REEVES to provide a doctor's note for every appointment she attended, but instead, was discriminating against Plaintiff because of her race and color.

58. On or about December 2017, Ms. Sullivan further harassed and discriminated against Plaintiff REEVES by calling her into a meeting and informing her that she was no longer allowed to attend upcoming training in Tampa, Florida in January.

59. Plaintiff REEVES was the only black African American non-managerial employee who was going to attend the training in Tampa, Florida on behalf of Defendants WELLCARE from the Kapolei office.

60. Plaintiff REEVES was the only employee of Defendants WELLCARE whom Ms. Sullivan wanted to prevent from attending the training in Tampa.

61. Plaintiff REEVES informed Ms. Sullivan that she had already received approval from her previous supervisor, Anne Reis to attend the training in Tampa.

62. Plaintiff REEVES informed Ms. Sullivan that as the person managing the HEDIS project, she needed to attend the training in Tampa, in addition to the fact that the training in January was part 2 of a two-part training and she had already attended part 1.

63. After having several meetings with Ms. Sullivan regarding her attendance at the training in Tampa, Ms. Sullivan gave in and told Plaintiff REEVES she was allowed to attend the training.

64. Approximately a week later, Ms. Sullivan began to harass Plaintiff REEVES again, by informing Plaintiff REEVES that she was not allowed to use her pre-approved time off (1 day) to leave a day early for the training in Tampa

because Ms. Sullivan wanted Ms. REEVES to travel with the rest of the department and leave on Saturday.

65. Plaintiff REEVES informed Ms. Sullivan, that because she was almost 2 months pregnant, had a high-risk pregnancy, and the flight from Honolulu to Tampa was more than 12 hours, her doctor suggested she leave Honolulu a day earlier thus arriving in Tampa on Saturday and have a whole day (Sunday) to rest prior to the training beginning.

66. Plaintiff REEVES further informed Ms. Sullivan that she had paid the $200 fee for the change in her flight with her own money/private credit card and that if Ms. Sullivan wanted Plaintiff REEVES to travel with the rest of the department that WELLCARE should pay the fee to change her flight departure from Friday to Saturday.

67. After several meetings with Ms. Sullivan, Ms. Sullivan finally gave in allowed Plaintiff REEVES to keep her pre-approved leave and adjusted flight to leave on Friday instead of Saturday.

68. On or about the end of December 2017, due to the stress caused by the harassment by Ms. Sullivan, Plaintiff REEVES suffered complications in her pregnancy and miscarried one of her babies.

69. On or about January 2018 Ms. Sullivan further discriminated against Plaintiff REEVES by refusing to approve Plaintiff REEVES' expense report for

the training in Tampa because Plaintiff REEVES refused to commit fraud by including a personal expense from the trip on her expense report.

70. Plaintiff REEVES informed Ms. Sullivan that her expense account itemization matched the charges on the Wellcare charge account, but Ms. Sullivan refused to approve Plaintiff REEVES' expense report.

71. Ms. Sullivan wanted Plaintiff REEVES to include the $200 change fee Plaintiff REEVES charged on her personal charge card for changing the outbound flight on her trip to the training in Tampa.

72. Plaintiff REEVES did not include that charge on her expense account itemization because it was a personal expense created by Plaintiff REEVES and Plaintiff REEVES was not seeking reimbursement from Defendants WELLCARE for that expense.

73. Ms. Sullivan discriminated against Plaintiff REEVES based on her race African American and color, black for refusing to fraudulently charge Defendant WELLCARE for a personal expense related to the training in Tampa, by refusing to sign off on Plaintiff REEVES' expense account itemization; however, Ms. Sullivan signed off on the expense account itemization of a non-African American non–black co-worker of Plaintiff REEVES who had fraudulently included 2 extra days of hotel charges and airport parking from the

training in Tampa while she vacationed in Tampa with her boyfriend at the expense of Defendants WELLCARE.

74. Ms. Sullivan further discriminated and harassed Plaintiff REEVES by refusing to sign off on her timesheet for the training she attended in Tampa.

75. On or about October 2017 when Plaintiff REEVES attended part one of the training in Tampa, due to the time difference between Florida and Hawaii, she could not enter in her hours of work on the Wellcare payroll timekeeping system, so her supervisor, Anne Reis manually entered the hours for her when she returned from the training.

76. Plaintiff REEVES reasonably relied on the past practice of her supervisor entering her hours of work when she attended the second training in Tampa in January of 2018.

77. Ms. Sullivan refused to manually enter Plaintiff REEVES' time while she attended the training in Tampa and kept asking Plaintiff REEVES, "how do I know what time you were at the conference?" Plaintiff REEVES responded, "I was there from 8:00 am to 5:00 pm with all the other Wellcare [Ohana] employees who were attending the training".

78. Ms. Sullivan continued to harass Plaintiff REEVES by refusing to manually enter in her work hours for the time she attending the training in Tampa

to the point that HR called Plaintiff REEVES several times and scolding her for not turning in her timesheet on time.

79. The conduct of Ms. Sullivan was not welcomed by Plaintiffs.

80. The conduct of Ms. Sullivan was so severe and pervasive that a reasonable person in Plaintiffs' position would find Plaintiffs' working environment to be hostile.

81. Defendants WELLCARE did not exercise reasonable care to prevent discrimination and harassment based on Plaintiffs' race, African American and color, black, in the workplace and did not exercise reasonable care to promptly correct the discriminatory and harassing behavior.

82. The long-standing racial discrimination and harassment had created a hostile and offensive working environment for Plaintiffs.

83. As a result of Defendants WELLCARE'S discrimination and harassment against Plaintiffs based on their race, African American, and color, black, Plaintiffs have suffered general and special damages in amounts to be shown at trial, and are entitled to all equitable and legal remedies and compensatory and punitive damages.

IV. <u>CLAIMS FOR RELIEF</u>

<u>VIOLATION OF Civil Rights Act of 1866 [codified at 42 U.S.C.A. §§ 1981].</u>

84. Plaintiffs hereby reallege and incorporates by reference the allegations contained in the preceding paragraphs.

85. The above described discriminatory and harassing pattern and practice by Defendants, its agents and employees violate the Civil Rights Act of 1866 as codified by 42 U.S.C.A. §§ 1981, and the Fourteenth Amendment to the Constitution.

86. As a direct and proximate result of said acts, Plaintiffs have suffered and continue to suffer damages in such amounts as shall be shown at the time of trial and is entitled to an award of compensatory and punitive damages, attorneys fees and costs, as well as other injunctive relief.

87. In performing all of the acts and omissions described above, Defendants, through their agents, employees, and/or representatives, acted intentionally, willfully, wantonly, oppressively, or with gross negligence, and/or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, and/or with willful misconduct and/or that entire want of care which raises a presumption of a conscious indifference to the consequences of their conduct. Defendants WELLCARE are therefore liable to Plaintiffs for punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiffs pray for Judgment against the Defendants as follows:

1. For special damages in amounts to be proven at trial.

2. For general damages in amounts to be proven at trial.

3. For punitive damages in amounts to be proven at trial.

4. For reasonable attorneys' fees and costs.

5. For further legal and equitable relief as provided for by law.

6. For all such other relief as the Court deems reasonable and proper.

DATED: Honolulu, Hawai'i, this 9th day of February 2021.

/s/ Rodney P. Bridgers, Jr.
RODNEY P. BRIDGERS, JR.
DAVID F. SIMONS

Attorneys for Plaintiffs
STEPHANA WOODEN
BRANDY REEVES